**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>THE COMMONWEALTH OF MASSACHUSETTS; MAURA HEALEY, Governor of Massachusetts, in her official capacity; PHILLIP ENG, Interim Secretary of Transportation, in his official capacity; COLLEEN OGILVIE, Registrar of Motor Vehicles, in her official capacity,<br><br>*Defendants*. | Civil Action No. 1:26-cv-12401-WGY |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

I. Legal Framework ........................................................................................................ 2

II. The Policy ........................................................................................................ 3

LEGAL STANDARDS ........................................................................................................ 5

ARGUMENT ........................................................................................................ 6

I. The United States Possesses Standing to Bring this Challenge. ........................................ 6

A. The United States Has Adequately Pled an Injury in Fact ........................................ 6

B. The United States' Injuries are Fairly Traceable to the Policy ................................ 10

C. The United States' Injuries are Redressable ........................................................ 12

II. The United States Has Stated a Claim Upon Which Relief Can be Granted .................... 13

A. The Complaint States a Claim That the Policy Violates Principles of Intergovernmental Immunity ........................................................ 13

1. The Policy Discriminates Against the Federal Government ........................ 13

2. The Policy Regulates the Federal Government ........................................ 16

B. Massachusetts' Reliance on the Tenth Amendment is Inapposite .......................... 19

CONCLUSION ........................................................................................................ 20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. United States*,
567 U.S. 387 (2012)........................................................3, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................5, 6

*Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*,
4 F.4th 63 (1st Cir. 2021)........................................................6

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)........................................................9, 10

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022)........................................................9

*Conservation L. Found., Inc. v. Acad. Express, LLC*,
129 F.4th 78 (1st Cir. 2025)........................................................6, 10

*CoreCivic, Inc. v. Governor of N.J.*,
145 F.4th 315 (3d Cir. 2025)........................................................15, 16, 18

*Diamond Alternative Energy, LLC v. EPA*,
606 U.S. 100 (2025)........................................................12

*Elk Grove Unified Sch. Dist. v. Newdow*,
542 U.S. 1 (2004)........................................................18

*Fiallo v. Bell*,
430 U.S. 787 (1977)........................................................19

*Hancock v. Train*,
426 U.S. 167 (1976)........................................................16

*Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*,
452 U.S. 264 (1981)........................................................19

*KalshiEX LLC v. Johnson*,
No. 26-cv-01715, 2026 WL 1223373 (D. Ariz. May 5, 2026)........................................................7

*Kokkonen v. Guardian Life Ins. Co.*,
511 U.S. 375 (1994)........................................................5

*Larson v. Valente*,
456 U.S. 228 (1982)........................................................13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)........................................................10

*Lujan v. Defs. of Wildlife*,

504 U.S. 555 (1992)........................................................................................................ passim

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990)........................................................................................................ 8

*Massachusetts v. United States Dep't of Health & Hum. Servs.*,
923 F.3d 209 (1st Cir. 2019)............................................................................................ 9

*Mayo v. United States*,
319 U.S. 441 (1943)........................................................................................................ 16

*McCulloch v. Maryland*,
17 U.S. (4 Wheat.) 316 (1819)................................................................................ 16, 18

*Murphy v. United States*,
45 F.3d 520 (1st Cir. 1995)............................................................................................. 5

*New York v. United States*,
505 U.S. 144 (1992)................................................................................................. 19, 20

*North Dakota v. United States*,
495 U.S. 423 (1990)................................................................................................. 13, 18

*Oceanic Navigation Co.* v. *Stranahan,*
214 U.S. 320 (1909)........................................................................................................ 19

*Reno v. Condon*,
528 U.S. 141 (2000)........................................................................................................ 20

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020).......................................................................................................... 2

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).......................................................................................................... 6

*Tennessee v. Davis*,
100 U.S. 257 (1879).......................................................................................................... 2

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).......................................................................................................... 6

*United States v. California*,
173 F.4th 1060 (9th Cir. 2026) .......................................................................... 7, 16, 17

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) ......................................................................................... 19

*United States v. City* of Philadelphia,
No. 26-cv-4208, 2026 WL 1906075 (E.D. Pa. July 2, 2026) ...................................... 12, 17, 18

*United States v. City of Pittsburgh*,
757 F.2d 43 (3d Cir. 1985) ............................................................................................... 7

*United States v. Commonwealth of Virginia*,
No. 3:26-CV-545, 2026 WL 2257488 (E.D. Va. Aug. 5, 2026) ........................................... 15

*United States v. Commonwealth of Virginia*,

No. 3:26-CV-545, 2026 WL 2411521 (E.D. Va. Aug. 18, 2026) .................................... 7, 9, 11

*United States v. Illinois*,
796 F. Supp. 3d 494 (N.D. Ill. 2025) ........................................................................... 12

*United States v. Minnesota*,
Nos. 26-cv-2661, 26-cv-2778, 26-cv-2841, 2026 WL 2150211 (D. Minn. July 27, 2026)........ 7

*United States v. Missouri*,
114 F.4th 980 (8th Cir. 2024) ...................................................................................... 10, 11

*United States v. Washington*,
596 U.S. 832 (2022)........................................................................................................ 2, 13

*Uzuegbunam v. Preczewski*,
592 U.S. 279 (2021)........................................................................................................... 13

*Valentin v. Hosp. Bella Vista*,
254 F.3d 358 (1st Cir. 2001)................................................................................................. 5

*Van Wagner Bos., LLC v. Davey*,
770 F.3d 33 (1st Cir. 2014)..................................................................................................... 6

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000).............................................................................................................. 6

*Wyandotte Transp. Co. v. United States*,
389 U.S. 191 (1967).............................................................................................................. 7

**Constitution and Statutes**

U.S. Const. art. I § 8, cl. 4 .................................................................................................. 3

U.S. Const. art. II § 3 ......................................................................................................... 2

U.S. Const. art. VI, cl. 2 ...................................................................................................... 2

Mass. Gen. Laws c. 4, § 7(26)(n).........................................................................................12

8 U.S.C. §
1182 .......................................................................................................................3
1225 .......................................................................................................................3
1229(a) ....................................................................................................................3
1231 .......................................................................................................................3
1232 .......................................................................................................................3
1324 .......................................................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(1)........................................................................................................ 5

Fed. R. Civ. P. 12(b)(6)........................................................................................................ 5

## INTRODUCTION

Each day, federal law enforcement officers place themselves at risk to enforce federal law—both civil and criminal—and keep our Nation safe. Regardless of whether the law being enforced is civil or criminal, federal law enforcement is a dangerous job. Federal officers employ various tools and techniques to ensure their safety (and the safety of those they are charged with protecting) while performing their official duties, including taking certain measures to keep their activities and identities unknown to the public, the criminals they investigate, and agitators seeking to impede law enforcement. One such tool is the use of confidential license plates. The Commonwealth of Massachusetts has issued confidential license plates to federal law enforcement agencies for many years but is now refusing to issue them to U.S. Immigration and Customs Enforcement (ICE) and U.S. Customs and Border Protection (CBP) because it objects to their immigration enforcement missions (hereinafter "the Policy"). It nonetheless continues to issue confidential plates to other law enforcement agencies for undercover work and to ensure officer safety. Its refusal to do the same for ICE and CBP is discriminatory and a direct regulation in violation of the intergovernmental immunity doctrine.

The Commonwealth of Massachusetts, Governor Maura Healey,[1] Phillip Eng, the Interim Secretary of Transportation, and Colleen Ogilvie, the Registrar of Motor Vehicles (collectively "Massachusetts") have moved to dismiss the United States' complaint, claiming the United States does not possess standing to challenge the Policy and that the complaint does not state a claim upon which relief can be granted. *See generally* ECF 25 (Memorandum of Law in Support of Defendants' Motion to Dismiss, hereinafter "MTD"). The United States possesses standing to

[1] Because Defendants concede that should the United States prevail, it can obtain complete relief from the remaining defendants, MTD at 20, the United States does not oppose dismissing the Governor from this lawsuit.

challenge this unconstitutional Policy, which not only inflicts a sovereign injury upon the United States, but needlessly places federal officers and those they protect at risk in the field. Moreover, these injuries are traceable to the Policy and are redressable by a favorable decision of this Court. As set forth in the complaint, the Policy is invalid under the doctrine of intergovernmental immunity and should be enjoined where it unlawfully discriminates against and regulates the Federal Government. For the reasons set forth below, this Court should deny Massachusetts' Motion to Dismiss in its entirety.

## BACKGROUND

### I. Legal Framework

The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause incorporates principles of intergovernmental immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly or discriminat[es] against the Federal Government or those with whom it deals." *United States v. Washington*, 596 U.S. 832, 838 (2022) (citation omitted). The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II § 3. Subordinate officers in various federal agencies assist the President in discharging that duty. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203-04 (2020); *see also Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (the Federal Government "can act only through its officers and agents"). Because the authority to execute the laws "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States," federal officers and agents "must act within the States." *Davis*, 100 U.S. at 263. Accordingly, federal law enforcement officers carry out their duties within the states, including Massachusetts.

For example, the Department of Homeland Security (DHS), through ICE, Homeland Security Investigations (HSI), and CBP, is principally responsible for enforcing our Nation's immigration laws, including the Immigration and Nationality Act (INA), and, pursuant to Congress's power to "establish an uniform Rule of Naturalization," U.S. Const. art. I § 8, cl. 4, make up the framework for the "governance of immigration and alien status," *see Arizona v. United States*, 567 U.S. 387, 395 (2012). The INA confers upon the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully present in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225–29a, 1231. As part of those enforcement efforts, DHS, through HSI, also investigates transnational crime and threats, including incidents of alien smuggling and human trafficking. *See* 8 U.S.C. §§ 1324, 1232.

Due to the nature of law enforcement operations, obtaining confidential registrations and license plates is critical to the success of those operations and to officer security. Their missions depend on the agencies' ability to engage in undercover operations, conduct surveillance, approach targets safely, and execute arrests without alerting the targets. Confidentiality in these scenarios is essential to the law enforcement mission of preventing violence, preserving evidence, and protecting the public. Such law enforcement operations require federal law enforcement officers to blend into the environment to avoid premature detection that could undermine the mission and place them at risk. If agents are forced to use public plates, enforcement targets may be able to track and evade enforcement. The use of confidential registrations and license plates ensures that critical operations are not compromised before they begin.

## II. The Policy

Massachusetts's Registry of Motor Vehicles (RMV) is an organization within the Massachusetts Department of Transportation, which is overseen by the Interim Secretary of

Transportation, Phillip Eng. It is responsible for, among other things, issuing vehicle registrations and license plates, and maintaining that data.

Massachusetts has administered a confidential license plate program for many years, which enables certain individuals to obtain confidential license plates, including state and federal law enforcement agencies.[2] "A confidential registration with the RMV conceals the owner or lessee of a registered government or personal motor vehicle. Such information will not be disclosed when the registration number is searched using the Department of Criminal Justice Information System (DCJIS) application, the National Law Enforcement Telecommunication System (NLETS), or RMV systems." ECF 25-1 (Policy) at 1. As recently as 2025, all federal agencies including CBP, ICE, and HSI, were able to obtain confidential vehicle registrations and license plates in Massachusetts. In 2026, Massachusetts changed its policy, instead refusing to issue such plates to CBP and ICE. Governor Healey's office explained the reason for the change, declaring, "[a]ny federal, state or local agency engaging in legitimate criminal law enforcement work can receive a confidential plate….We all know that's not what ICE is doing. This is an agency that can't and won't even tell us who they are arresting and why. We are not going to enable their tactics." ECF 1 (Compl.) ¶ 23.

Massachusetts contends that the policy reflects a distinction between law enforcement agencies primarily engaged in civil investigations versus those primarily engaged in criminal investigations. *See* ECF 1-1 (Compl. Exh. A) at 1-2; MTD at 13. However, even under the revised Confidential Registration Application Massachusetts submitted with its motion to dismiss, law enforcement, certain members of the judiciary, certain members of the public, and certain

---

[2] *See* "Special Report: Confidential Registration Plates, May 1989" at 17, available at https://archives.lib.state.ma.us/server/api/core/bitstreams/78df44cb-640f-45ed-8e68-c0db6c5364d3/content (last visited Aug. 28, 2026).

probation officers are eligible to obtain confidential registrations. ECF 25-2 (Confidential Registration Application) at 2.

Furthermore, as to Massachusetts state vehicles, the Policies and Procedures Manual of the Office of Vehicle Management (OVM PPM) does not draw a distinction between civil law enforcement and criminal law enforcement. Compl. ¶ 28 (citing OVM PPM, available at https://www.mass.gov/doc/ovm-policy-and-procedures-manual (last visited Aug. 28, 2026) and attached as Compl. Exh. C). Rather, it states that such vehicles "may be issued a confidential registration if such vehicles are in the possession of law enforcement personnel or have received a waiver through [Administration & Finance] and such registration is necessary either for undercover investigatory work or to protect the physical safety of law enforcement personnel using the vehicle." ECF 1-3 (Compl. Exh. C) at 7.

## LEGAL STANDARDS

A motion to dismiss filed under Rule 12(b)(1) challenges subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence, including affidavits or other documents. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). The plaintiff bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995).

Under Rule 12(b)(6), a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The factual "allegations must be enough to raise a right to relief above the speculative level" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "Evaluating whether a complaint states a plausible claim for

relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 70 (1st Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## ARGUMENT

### I. The United States Possesses Standing to Bring this Challenge.

Constitutional standing is an indispensable component of the case-or-controversy requirement of Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To demonstrate standing, "a litigant 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Conservation L. Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 86 (1st Cir. 2025) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

#### A. The United States Has Adequately Pled an Injury in Fact

The United States has pled an injury in fact sufficient to withstand dismissal where it has pled an injury that is "both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Van Wagner Bos., LLC v. Davey*, 770 F.3d 33, 37 (1st Cir. 2014) (internal citation and quotation marks omitted). "[T]raditional harms" that qualify as concrete injuries for purposes of standing "may also include harms specified by the Constitution itself." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). The complaint sets forth two injuries: sovereign injury and the endangerment of officers, the public, and deterioration of operational effectiveness. Compl. ¶¶ 31-50. Both confer standing.

**1.** At the threshold, the United States has established that the Policy inflicts a sovereign injury. *Id.* ¶ 31. "It is beyond doubt that [a] complaint asserts an injury to" the "sovereignty" of the United States where there is a "violation of its laws." *Vt. Agency of Nat. Res.*

*v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000). After all, "[v]indicating the *public* interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive." *Lujan*, 504 U.S. at 576. Thus, when federal law is violated, including the Constitution, the United States suffers a sovereign injury and has standing to sue. *See United States v. Minnesota*, Nos. 26-cv-2661, 26-cv-2778, 26-cv-2841, 2026 WL 2150211, at *8-9 (D. Minn. July 27, 2026) (rejecting State's argument that "the CFTC's interest in enforcing federal law is too amorphous to constitute an injury in fact"); *KalshiEX LLC v. Johnson*, No. 26-cv-01715, 2026 WL 1223373, at *3 (D. Ariz. May 5, 2026) ("The federal government 'may sue to protect its interests,' and that authority extends to suits seeking to enjoin the enforcement of preempted state law'" (quoting *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967))). Massachusetts' assertion that a sovereign injury alone is insufficient is thus patently false. MTD at 6.

That is even more obvious where, as here, the challenged Policy regulates and discriminates against the United States. *See United States v. California*, 173 F.4th 1060, 1069 (9th Cir. 2026) ("[I]rreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity."); *United States v. Commonwealth of Virginia*, No. 3:26-CV-545, 2026 WL 2411521 (E.D. Va. Aug. 18, 2026). The complaint clearly alleges that the Policy interferes with the United States' "sovereign authority to manage federal law enforcement activities." Compl. ¶ 31. Accordingly, the United States has adequately pled that the Policy poses "an injury to its sovereign rights" which is "sufficient to have standing to sue in the district court." *United States v. City of Pittsburgh*, 757 F.2d 43, 45 (3d Cir. 1985).

**2.** The complaint alleges a traditional concrete injury as well, describing in detail the detrimental impact of the Policy on federal officers and the public. Compl. ¶¶ 32-50. "At the

pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). The allegations of harm described in the complaint amply satisfy this standard. For example, without the ability to obtain confidential plates, federal law enforcement vehicles can be more readily identified, which can lead to the "track[ing] and evad[ing of] law enforcement" by members of the public, and may even result in agitators and targets "follow[ing] and imped[ing] law enforcement." Compl. ¶ 35. Moreover, "subjects may destroy evidence, evade apprehension, flee the jurisdiction, take countermeasures that endanger the public, or otherwise alter their behavior." *Id.* ¶ 36. Detection by the public also causes a host of operational complications. *Id.* ¶ 37. Federal law enforcement officers routinely engage in missions "requir[ing] operational anonymity, including threat assessments, protective intelligence, surveillance operations, task force operations, drug investigations, and state and local collaborative operations." *Id.* Without the ability to obtain confidential plates, federal officers may be required "to modify, delay, or forego operations, increasing risks to federal law enforcement officers and the communities they serve." *Id.* ¶ 38.

Moreover, the complaint details the impact of the Policy on the Federal Government's ability to protect the identities of federal officers "due to the increasing threats of targeted harassment and retaliation against federal officers and agents." *Id.* ¶ 42. For example, members of the public have "photograph[ed] officers' faces and run them through facial recognition applications that search social media and doxxing sites such as ICESpy.org, ICEList.is, and ICEList.info" to search for officers and their family members, harass them, and obstruct law enforcement. *Id.* ¶ 44. Such threats come from rioters, illegal aliens, and criminals. *Id.* ¶ 45. The

complaint notes that "ICE officers are facing an 8,000% increase in death threats and more than a 1,000% increase in assaults, which are facilitated by doxxing websites that broadcast the identities and home addresses of officers and their families, encouraging retaliation against them." *Id.* (citing Press Release, DHS, 8000% Increase in Death Threats Against DHS, ICE Law Enforcement as They Risk Their Lives to Remove the Worst of the Worst (Oct. 30, 2025), https://perma.cc/VXK9-MSBQ). Massachusetts' sudden decision to halt the issuance of confidential plates to ICE and CBP officers exacerbates these risks.

According to Massachusetts, the United States has failed to plead an injury in fact where it does not describe a specific harm that it has actually suffered. Not so. As described above, the United States is presently suffering a sovereign injury where the Policy is unconstitutional and the loss of confidential plates is undermining operational effectiveness and officer safety. Even so, the United States "need not wait for an actual injury to occur before filing suit." *Massachusetts v. United States Dep't of Health & Hum. Servs.*, 923 F.3d 209, 222 (1st Cir. 2019); *see also Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022) ("That 'actual or imminent' is disjunctive is critical: it indicates that a plaintiff need not wait until he or she has *actually* sustained the feared harm in order to seek judicial redress, but can file suit when the risk of harm becomes imminent.") (emphasis in original). The injuries described in the complaint regarding imminent threats to officer safety and federal law enforcement operations are sufficiently threatening for purposes of demonstrating standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (injury must be "certainly impending" to satisfy standing requirement); *see also Virginia*, 2026 WL 2411521, at *14 (finding immediate irreparable harm where "ICE officers regularly, and in many locations, face doxxing, threats, and assaults and that there are even bounties offering money for doxxing, threatening, and killing ICE officers."). For example, the Eighth Circuit held that the United States

had standing to challenge a Missouri law that removed voluntary assistance in enforcing federal gun laws even though there was no specific incident where that lack of assistance caused a more specific harm. *United States v. Missouri*, 114 F.4th 980, 983-85 (8th Cir. 2024). The same is true here: the United States amply documented the increasing hostility toward immigration enforcement, *see, e.g.*, Compl. ¶ 42-45, which substantiates the imminence of the threats to ICE and CBP officers in the field to confer standing. *See Clapper*, 568 U.S. at 416.

### B. The United States' Injuries are Fairly Traceable to the Policy

Likewise, the complaint demonstrates that the United States' injury is fairly traceable to the Policy because there is "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. This is not the same as proximate causation. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). Indeed, "[a] plaintiff can satisfy traceability by showing 'that the defendant's conduct is one among multiple causes' of the alleged injury.'" *Conservation L. Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 90 (1st Cir. 2025) (internal citation omitted).

Here, the Policy, which prohibits DHS-affiliated entities involved with civil immigration enforcement from obtaining confidential license plates, places federal officers and law enforcement operations at risk. For many years, Massachusetts has routinely issued confidential plates—as opposed to regular state plates—to federal agencies to conceal their identities and more effectively conduct surveillance and undercover operations. *See* Compl. ¶¶ 2, 21. This is presumably why Massachusetts still issues them to state and local officers. As explained, by refusing to issue confidential plates to ICE and CBP, the Policy places federal officers at risk of being doxxed and tracked, thus putting their operations and safety at risk. *Id.* ¶¶ 34-49. The removal of that longstanding benefit harms federal operations and is traceable to the Policy. *See*

*Missouri*, 114 F.4th at 985.

Massachusetts seems to argue that because "the public has no access to registration information for law enforcement vehicles or their operators regardless of whether that vehicle has a confidential or standard license plate" there is no harm caused by the policy. MTD at 10. Massachusetts' argument implies their confidential plate program is functionally useless because the public cannot track plates regardless of their status. *See id.* But Massachusetts clearly does not believe this because it still provides confidential plates to its own employees for civil and criminal purposes. And Massachusetts' justification for denying confidential plates to CBP and ICE was because they did not wish "to enable their tactics." Compl. ¶ 23. That reflects an understanding that the plates are useful to DHS operations and the point of the Policy is to undermine them. Clearly, confidential plates benefit the agencies using them, and taking away those plates (as the Policy does) harms the United States. *See Missouri*, 114 F.4th at 985. Moreover, the harms attendant using conspicuous license plates are not based on the public accessing a database storing license plate information. Bad actors may nevertheless obtain standard license plate information through other channels and target federal law enforcement. That harm is caused by the Policy.

Moreover, Massachusetts' argument that the examples of harm cited in the complaint occurred outside of Massachusetts (MTD at 10) "does not detract from the fact that those who would interfere with ICE operations, threaten or assault its officers, or attempt to collect bounties, can be expected to engage in the same, or like, tactics and conduct in" Massachusetts where "[t]hose events show that the doxxing, threats, and assaults can occur in any locality where ICE is enforcing the immigration laws." *Virginia*, 2026 WL 2411521, at *13. The same is true for Massachusetts' arguments that third parties are causing the cited harm. The point is that the Policy is removing a tool to mitigate those harms, thus injuring the United States. *Id.* (finding similar

irreparable harms from state prohibiting federal officers from using mitigating tactics). The refusal of Massachusetts to issue confidential license plates to federal law enforcement officers engaged in immigration enforcement increases the risk that federal vehicles will be identified, agitators will attempt to impede operations, and criminals will evade capture. Accordingly, the United States' injury is fairly traceable to the Policy.

### C. The United States' Injuries are Redressable

Finally, should the Court rule in the United States' favor, it is "likely, as opposed to merely speculative," that such an order would redress the United States' injuries. *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). To demonstrate that the injury is redressable, "the plaintiff must simply 'show a predictable chain of events' that would likely result from judicial relief and redress the plaintiff's injury." *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 121 (2025) (internal citation omitted).

Importantly, enjoining the Policy would redress the United States' harms by enabling ICE and CBP officers to once again obtain confidential license plates, which will restore the ability of the Federal Government to manage the way it conducts federal law enforcement activities. *See, e.g.*, *United States v. Illinois*, 796 F. Supp. 3d 494, 510 (N.D. Ill. 2025) ("Enjoining the Policies would redress the alleged harm by removing definitive impediments to federal immigration policy."); *United States v. City of Philadelphia*, No. 26-cv-4208, 2026 WL 1906075, at *8 (E.D. Pa. July 2, 2026) ("[T]here is a strong likelihood that the United States' injury is redressable by a favorable decision that enjoins Defendants from enforcing the Bill against federal officers").

Massachusetts contends that the United States cannot establish redressability because registration information for all law enforcement vehicles is exempt from public disclosure under Massachusetts law. MTD at 2 (citing M.G.L. c. 4, § 7(26)(n)). This argument fails for the reasons

their traceability argument fails. The fact remains that "a standard license plate links the vehicle to its owner or lessee" in Massachusetts online systems, at the very least identifying the agency to whom the vehicle belongs, thereby risking exposure of federal officers should someone with access to those systems disseminate that information. In contrast, enabling federal civil law enforcement agencies to participate in the confidential plate program would "conceal the owner or lessee's registration information from appearing in" those databases, drastically decreasing the likelihood that federal officers can be identified by the vehicles they operate. MTD at 2. An order enjoining the Policy would at the very least partially redress the United States' injuries, which suffices to demonstrate standing. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement.") (internal citation omitted). Accordingly, the United States has demonstrated that its injuries are redressable. *See Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury.") (emphasis in original).

## II. The United States Has Stated a Claim Upon Which Relief Can be Granted

The United States has amply stated a claim that the Policy violates principles of intergovernmental immunity and is invalid under the Supremacy Clause where it unlawfully discriminates against and regulates the Federal Government. Massachusetts' reliance on the Tenth Amendment has no bearing on the analysis.

### A. The Complaint States a Claim That the Policy Violates Principles of Intergovernmental Immunity

#### 1. The Policy Discriminates Against the Federal Government

The United States has stated a claim that the Policy discriminates against the Federal Government. Discrimination occurs when a state "treats someone else better than" the Federal

Government, *North Dakota v. United States*, 495 U.S. 423, 438 (1990), or "singl[es] out the Federal Government for unfavorable treatment." *Washington*, 596 U.S. at 839.

Massachusetts contends that "the Policy does not discriminate against the Federal Government where it treats ICE and CBP the same as all similarly situated civil enforcement agencies." MTD at 13. However, that distinction does not acknowledge another provision in the Policy, which provides:

> Members of the judiciary, past or *present members of law enforcement*, corrections officers, prosecutors, probation officers, medical providers pursuant to St. 2022, c. 127, or other government officials; provided, that each applicant sets forth in writing: (i) specific and articulable facts that demonstrate a threat to their personal safety arising from the performance of their official duties; and (ii) how enrollment in the CRP may mitigate that threat. This standard is not satisfied by generalized, nonspecific, or non-individualized statements that the nature of the applicant's duties, by themselves, pose a threat of harm.

Policy at 2 (emphasis added). The Confidential Registration Application Massachusetts submitted with its motion confirms this group of individuals is eligible for confidential plates. Confidential Registration Application at 2.

Furthermore, the OVM PPM, which governs state vehicles in Massachusetts, contemplates *all* law enforcement vehicles "may be issued a confidential registration if such vehicles are in the possession of law enforcement personnel or have received a waiver through [Administration & Finance] and such registration is necessary either for undercover investigatory work or to protect the physical safety of law enforcement personnel using the vehicle." OVM PPM p. 7. It does not draw a distinction between civil law enforcement and criminal law enforcement. In response, Massachusetts contends that "OVM manages state-owned vehicles; it has no authority over the issuance of confidential plates or responsibility for the Policy." MTD at 14. But the fact that a fellow state agency contemplates confidential license plates for its vehicles that do not only engage in criminal law enforcement plausibly supports the proposition that Massachusetts is still issuing

confidential plates to certain civil law enforcement entities through the provision for past or present members of law enforcement. Policy at 2; Confidential Registration Application at 2.

And even under Massachusetts' own telling, the Policy is clearly discriminatory. According to Massachusetts, the only distinction in the law is "based on whether [the agency] primarily engage[s] in civil or criminal law enforcement." MTD. at 13. As just explained, that is false. But even so, Massachusetts' use of the vague word "primarily" is telling. CBP and ICE do engage in criminal enforcement. Yet Massachusetts makes clear that it believes they "primarily" engage in civil enforcement and thus the Policy is perfectly crafted to exclude them.

Governor Healey's office's statements regarding the policy further underscore the discriminatory nature of the Policy by declaring, "[a]ny federal, state or local agency engaging in legitimate criminal law enforcement work can receive a confidential plate….We all know that's not what ICE is doing. This is an agency that can't and won't even tell us who they are arresting and why. We are not going to enable their tactics." Compl. ¶ 23. It is thus no wonder that Massachusetts urges this Court to ignore those statements. MTD at 14-15. They evidence that the purpose and effect of the Policy is to discriminate against immigration enforcement. According to Massachusetts, such statements should not bear on the "intergovernmental immunity analysis of a facially neutral policy like this one." *Id.* at 14. That is wrong. *See, e.g.*, *United States v. Commonwealth of Virginia*, No. 3:26-cv-545, 2026 WL 2257488, at *3 (E.D. Va. Aug. 5, 2026) (looking at the purpose of the law to confirm it violated principles of intergovernmental immunity). Massachusetts is attempting to use this purportedly "neutral" Policy "to evade the limits on immunity by indirectly achieving the same result." *CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315, 322 (3d Cir. 2025) ("[W]hat cannot be done directly cannot be done indirectly.") (internal quotation marks omitted). The purpose and effect of the Policy is that ICE and CBP are prohibited

from obtaining confidential plates while similarly situated state and local officers are not. Massachusetts has not been subtle in expressing that the purpose of its Policy is to treat federal immigration enforcement less favorably than other law enforcement entities because it disagrees with such enforcement. Compl. ¶ 23. Accordingly, Count I withstands dismissal.

### 2. The Policy Regulates the Federal Government

The United States' complaint states a claim for relief that the Policy impermissibly regulates the Federal Government. Under the Supremacy Clause, States have no power to "in any manner control[] the operations of" the Federal Government. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819). "[I]ntergovernmental immunity … forbids States from regulating the federal government *qua* government and from controlling federal governmental functions in any manner and to any degree." *California*, 173 F.4th at 1068; *see CoreCivic, Inc.*, 145 F.4th at 321 (A state law unlawfully regulates the United States when it "'places [either] a prohibition' or mandate on the federal government." (quoting *Hancock v. Train*, 426 U.S. 167, 180 (1976))). The Supreme Court has long held that "the activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943). "The Supremacy Clause prohibits States from enacting a law that directly regulates federal operations even if the law regulates state operations in the same manner." *California*, 173 F.4th at 1067.

Massachusetts' blanket refusal to issue confidential license plates to ICE and CBP under the guise that they are engaged "primarily" in civil enforcement is a direct regulation because it expressly dictates how federal law enforcement may do their job. By prohibiting ICE and CBP from obtaining confidential plates, Massachusetts impedes those agencies from engaging in undercover and surveillance work merely because the State disapproves of the federal function they serve. *See*, *e.g.*, ECF 1-1 (Correspondence from the Governor's Office to the Justice

Department Regarding the Policy) at 2-3 ("The fact that ICE has adopted increasingly aggressive and unconstitutional tactics to enforce civil immigration laws does not override its statutory mission or transform it into a criminal law enforcement entity; and Massachusetts will not treat it as such."); *see also* Compl. ¶ 23 (quoting Governor Healey's office as describing ICE as "an agency that can't and won't even tell us who they are arresting and why. We are not going to enable their tactics."). As a result, Massachusetts requires federal officers to use conspicuous plates that are more easily tracked in order to drive within the state.

As the Ninth Circuit observed in granting the United States' motion for a preliminary injunction against a California law that sought to require federal law enforcement officers to "visibly display identification" when "performing their enforcement duties," the Policy here "seeks to control [federal officers'] conduct in performing law enforcement operations." *California*, 173 F.4th at 1067. The Ninth Circuit held that the challenged identification requirement "purports to override the federal government's power to determine whether, how, and when to publicly identify its officers," "[a]nd in so doing, it aims to regulate the manner and conditions under which federal agents can enforce federal law." *Id.* The Ninth Circuit emphatically held that "if a state law directly regulates the conduct of the United States, it is void irrespective of whether the regulated activities are essential to federal functions or operations, and irrespective of the degree to which the state law interferes with federal functions or operations." *Id.* at 1067. Moreover, the District Court for the Eastern District of Pennsylvania held that a Philadelphia law that prohibited federal law enforcement from using vehicles that do not clearly identify the vehicle with information regarding the employing agency impermissibly regulated the Federal Government where it sought to control how federal law enforcement officers performed their duties and conducted operations. *City of Philadelphia*, 2026 WL 1906075, at *9-10. That reasoning

applies squarely to Massachusetts' decision to prohibit ICE and CBP from obtaining confidential license plates. Massachusetts seeks to regulate the manner and conditions by which federal officers must operate when conducting their official duties and enforcing the law. *See id.* Massachusetts has no power to impose such regulations. *North Dakota*, 495 U.S. at 437-38 ("States may not directly obstruct the activities of the Federal Government.").

Massachusetts contends that the Policy does not regulate the Federal Government where "it does not place any prohibition on the Federal Government." MTD at 16. In an attempt to circumvent the principles of intergovernmental immunity, Massachusetts describes the Policy as a regulation of the conduct of state workers, not the Federal Government. *Id.* However, in reality, this directive actively deprives ICE and CBP of the benefit of confidential license plates, which in turn affects how these federal agencies can enforce the law. But "what cannot be done directly cannot be done indirectly." *CoreCivic, Inc.*, 145 F.4th at 322 (internal quotation marks omitted). In *CoreCivic*, the Third Circuit invalidated a state law that banned state and local governments and private parties from making, renewing, or extending contracts to detain people for civil immigration violations. *Id.* at 319. Although the law did not name the Federal Government in its text, the Third Circuit probed the purpose and self-evident operation of the statute, "easily see[ing] the law for what it really [was]: a regulation" of the Federal Government. *Id.* at 325. The same is true here, as evidenced by the statements from Governor Healey's office. Compl. ¶ 23. The Framers of the Constitution "did not intend" for federal operations to "depend on the discretion of the state governments," *McCulloch*, 17 U.S. at 327, 362, yet that is the power Massachusetts seeks to exert over the Federal Government's immigration enforcement authority.

Massachusetts also argues that the Policy is not a direct regulation where "it does not substantially interfere with or control ICE or CBP's operations." MTD at 17. But as the Supreme

Court and others have explained, that is the wrong test, as "[t]here are no *de minimis* violations of the Constitution--no constitutional harms so slight that the courts are obliged to ignore them." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 36-37 (2004) (O'Connor, J. concurring); *see also United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019) ("Supreme Court case law compels the rejection of a *de minimis* exception to the doctrine of intergovernmental immunity.").

The spirit and effect of the Policy are to control federal officers in the commission of their official duties in Massachusetts and to chill the zealous enforcement of federal law. The Policy is therefore void under the Supremacy Clause and Count II should not be dismissed.

### B. Massachusetts' Reliance on the Tenth Amendment is Inapposite

The Tenth Amendment is not a basis to dismiss the United States' well-pleaded complaint. Under the Tenth Amendment, "Congress may not simply 'commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.'" *New York v. United States*, 505 U.S. 144, 161 (1992) (quoting *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264, 288 (1981)). But that requires, first, power reserved to the States. In the context of immigration, "[t]he Government of the United States has broad, undoubted power." *Arizona*, 567 U.S. at 394. "'[O]ver no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Navigation Co.* v. *Stranahan,* 214 U.S. 320, 339 (1909)).

Any anticommandeering analysis must begin with the specific powers reserved to the states. Here, Massachusetts appears to assert that the power reserved is the general ability to choose to refrain from participating in federal immigration enforcement. MTD at 18. Invalidating the Policy as applied to the Federal Government would not amount to commandeering where regulation of federal officers and explicit discrimination against the Federal Government are not

powers reserved to the states. Instead, an order enjoining the Policy would prevent Massachusetts from controlling the Federal Government's lawful exercise of its own sovereign authority to enforce the immigration laws. *See New York*, 505 U.S. at 156 ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States ..."). It would turn the Constitution on its head to suggest the Tenth Amendment allows states to regulate or discriminate against the Federal Government. Once Massachusetts decided to offer confidential plates, it could not deny them discriminatorily.

And the result of such an order is not that Massachusetts employees will have to enforce immigration law, just that Massachusetts cannot deny confidential plates that they otherwise issue to state and local officers. The Supreme Court has rejected arguments that the Tenth Amendment is violated whenever a federal law "will consume [state or local] employees' time and thus the State's resources." *Reno v. Condon*, 528 U.S. 141, 150 (2000). Processing and issuing confidential plates (as Massachusetts does for standard plates) is hardly commandeering. By Massachusetts' logic, it could refuse to issue any plates to United States employees lest they be commandeered. That is simply too broad a reading of the Tenth Amendment. In filing this lawsuit, the United States is not forcing Massachusetts to "aid the Federal Government in its immigration enforcement efforts." MTD at 19. Instead, the United States merely asks Massachusetts to resume its issuance of confidential license plates to ICE and CBP in the normal course of its operations and to refrain from unlawfully discriminating against and regulating the Federal Government.

**CONCLUSION**

The United States respectfully requests that this Court deny Massachusetts' Motion to Dismiss Plaintiff's complaint in its entirety.

DATED: August 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TIBERIUS DAVIS
Counsel to the Assistant Attorney General
Civil Division

LEAH B. FOLEY
United States Attorney
District of Massachusetts

JACQUELINE COLEMAN SNEAD
Deputy Director

ALEXANDRA MCTAGUE SCHULTE
Senior Litigation Counsel

*_/s/ Alessandra Faso_*
ALESSANDRA FASO
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386
(202) 451-7728
alessandra.faso@usdoj.gov

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2026, a true and correct copy of the foregoing document was electronically filed using CM/ECF for the District of Massachusetts, which will provide electronic notice and an electronic link to this document to all attorneys of record.

By: *<u>/s/ Alessandra Faso</u>*
ALESSANDRA FASO
Senior Litigation Counsel
U.S. Department of Justice
Civil Division